UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

10 MAR 15  PH 2: 4

U.S.

---------------------------------------------x
CHERYL FOLLMAN,                    )
individually and on behalf of       )
all others similarly situated,       )
                                    )
                Plaintiff,           )
                                    )
        - against -                  )
                                    )
BIG M, Inc.                          )
d/b/a/ ANNIE SEZ,                   )
                                    )
                Defendant.           )
---------------------------------------------x

CV 10 - 1166

CLASS ACTION

JURY DEMANDED

KORMAN, J.

LEVY M.

**COMPLAINT**

1.     This action seeks redress for the illegal practices of Defendant Big M,

Inc. (the "Issuer"), also known as Annie Sez,  including  providing incomplete or

improper disclosures to its customers in violation of the Truth in Lending Act

("TILA").

2.     TILA's purpose is to assure meaningful disclosure of credit terms in

order to (i) allow consumers to compare more readily the various credit terms

available; (ii) enable consumers to avoid the uninformed use of credit; and (iii)

protect consumers against inaccurate and unfair billing practices.  15 U.S.C. §

1601(a).  As alleged in greater detail below, the Issuer failed to make certain

disclosures on statements it provided to customers.  The Issuer's conduct violates

the express provisions of the TILA and the applicable Regulations.

1

3.     Under the private enforcement provisions of TILA, plaintiff and the

Class seek the recovery of statutory damages of up to $500,000 with respect to each

of the Issuer's failures to comply.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1337, as well as under 15 U.S.C. § 1640(e), because this action arises under the

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*

5.     Venue is proper because the acts and transactions that give rise to this

action occurred, in substantial part, in this District.  Venue is also proper in this

district because the Issuer transacts business in this district and the interests of

justice require maintenance of this action in this district.

## PARTIES

6.     Plaintiff Cheryl Follman resides in Brooklyn, New York, which is

within this district.

7.     Follman is a "consumer," as that term is defined by § 1602(h) of TILA,

because this complaint arises from the Issuer's offer and extension of credit to

Follman, a credit card holder, for personal, family or household purposes.

8.     Upon information and belief, the Issuer is a corporation doing business

in the State of New York and throughout the United States, with a principal place

of business in New Jersey.

2

9.     The Issuer is a "creditor," as that term is defined by § 1602(f) of TILA and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226.2(a)(17), because at all relevant times, the Issuer, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than 4 installments.

## FACTUAL ALLEGATIONS

10.     Follman opened an Annie Sez credit account issued by the Issuer in February of 2009 under the terms and conditions attached as <u>Exhibit A</u>.

11.     Issuer sent Follman an Annie Sez periodic statement in March of 2009, a photocopy of which is attached as <u>Exhibit B</u>.

12.     All class members herein, as defined below, hold or held an Annie Sez account originally or presently issued by the Issuer.

## CLASS ALLEGATIONS

13.     Follman brings this action individually and on behalf of all persons similarly situated.

14.     The proposed class consists of all persons who, according to the Issuer's records, opened Annie Sez accounts and were provided with disclosures in their periodic statements within one year before the filing of this action that, as described below, did not conform to TILA requirements.

15.     Specifically excluded from this class are the Issuer, any entity in which the Issuer has a controlling interest, and the officers, directors, affiliates, legal

representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

16.    The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable.  In light of the thousands of credit cards issued by the Issuer every year, the number of class members is believed to exceed 5,000 persons.

17.    Follman's claims are typical of, if not identical to, all members of the class and Follman does not have any interest that is adverse or antagonistic to the interests of the class.  If the conduct of the Issuer violates TILA as applied to Follman, then it violates TILA with respect to the entire class.

18.    Follman will fairly and adequately protect the interests of the class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

19.    The class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

20.    The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein.  Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually

for the wrongs they have suffered.  Members of the class do not have a particular

interest in individually controlling the prosecution of separate actions.

21.     There are questions of law and fact which are common to the members

of the class and which predominate over questions affecting only individual

members.  Common questions of law and fact include, but are not limited to,

whether the Issuer has a standardized procedure by which it fails to clearly and

conspicuously disclose their customers' billing rights as required by TILA and

Regulation Z.

22.     Upon information and belief, the Class consists of thousands of

customers.

23.     Thus, a class action is an appropriate and superior method for the fair

and efficient adjudication of the present controversy given the following factors:

a) Common questions of law and/or fact predominate over any individual
   questions which may arise and, accordingly, there would accrue
   enormous savings to both the Court and the Class in litigating the
   common issues on a class-wide instead of a repetitive individual basis;
   and

b) The aggregate volume of the individual class members' claims, coupled
   with the economies of scale inherent in litigating similar claims on a
   common basis, will enable this case to be litigated as a class action on a
   cost-effective basis, especially when compared with repetitive
   individual litigation.

24.     Class certification is also fair and efficient because prosecution of

separate actions by individual Class members would create a risk of differing

adjudications with respect to such individual members of the Class, which as a

practical matter may be dispositive of the interests of other members not parties to

5

the adjudication, or substantially impede their ability to protect their interests.

Moreover, since the actual monetary damages suffered by, or statutory damages

available to, individual Class members may be relatively small, although significant

in the aggregate, the expenses and burdens of individual litigation make it

impossible or effectively impossible for the members of the Class to seek individual

redress for the TILA violations committed by Defendants.

25.    Plaintiff anticipates that there will be no difficulty in the management

of this litigation.  The records of the individuals encompassed within the Class are

in Defendant's possession.

## COUNT I

### Violations of the Truth in Lending Act

26.    Plaintiff repeats and realleges each and every allegation contained in

the foregoing paragraphs with the same force and effect as though fully set forth

herein.

27.    Congress authorized the Federal Reserve Board ("FRB") to promulgate

regulations granting it broad authority to effectuate the purposes of TILA. 15

U.S.C. § 1604(a).

28.    The set of regulations that the FRB has promulgated to implement

TILA is known as Regulation Z.  12 C.F.R. §226.1 *et seq.*

29.    TILA and Regulation Z require Issuer to provide certain initial

disclosures to a customer "before opening any account." 15 U.S.C. § 1637(a), 12

C.F.R. § 226.6.

6

30.   After a customer's account account is opened, TILA and Regulation Z require Issuer to provide certain periodic disclosures "for each billing cycle." 15 U.S.C. § 1637(b), 12 C.F.R. § 226.7.

31.   Regulation Z requires Issuer to make disclosures that reflect the terms of the legal obligation between the parties. 12 C.F.R. § 226.5(c).

32.   Subsequent to the opening of the account, when an issuer wishes to make a change to the terms of credit, Regulation Z requires the issuer to provide advance notice of such change. 12 C.F.R. § 229(c).

33.   TILA and Regulation Z require Issuer to disclose in the initial disclosure statement the "grace period," *i.e.*, the number of days a customer will have to repay the balance owed, or a portion of the balance owed, without incurring additional finance charges. 15 U.S.C. § 1637(a)(1), 12 C.F.R. § 226(a)(1).

34.   TILA and Regulation Z require Issuer to also disclose this "grace period" in the periodic billing statements it sends customers. 15 U.S.C. § 1637(b)(9), 12 C.F.R. § 227(j).

35.   Under the terms of Issuer's initial disclosure statement, customers were entitled to a grace period if the sum of *all payments and credits* equaled or exceeded the new balance by the payment due date, which was set at least 25 days after the closing date of the billing statement. *See* Exhibit A.

36.   However, under the different terms contained in Issuer's periodic billing statement, customers were entitled to a grace period only with the full

payment of the new balance by the payment due date, without regard to credits issued. *See* Exhibit B.

37.    If Issuer's grace period terms in the initial disclosure statement were the true terms, then the different terms in the periodic billing statement constituted a disclosure that did not reflect the legal obligation of the parties, and thus a violation of Regulation Z and TILA. *See* 12 C.F.R. § 226.5(c).

38.    Alternatively, if Issuer's grace period terms in the periodic billing statement superseded the original terms and were the new true terms, then the different terms in the periodic billing statement constituted a change in terms that was not made with proper notice, and thus a violation of Regulation Z and TILA. *See* 12 C.F.R. § 226.9(c).

39.    Regulation Z requires that periodic statement disclosures be made "clearly and conspicuously."  12 C.F.R. § 226.5(a)(1).

40.    The Staff Commentary to Regulation Z mandates that to meet the "clearly and conspicuously" requirement, disclosure documents of more than one page or side of a page must form an "integrated document," and that documents containing mandatory disclosures interspersed with promotional material do not constitute an "integrated document." 12 C.F.R. §226 Supp. I, Comment 5(a)-2.

41.    The March Statement, which included certain mandatory periodic statement disclosures on its front and reverse sides, also contained the following promotional material in the middle of its front side: "Shop Annie Sez for the latest Spring trends from famous designer names at famously low prices! Choose from our

8

new arrivals of designer shoes, handbags, dresses and Spring outerwear all at a savings of up to 60% off department store prices!"

42.    Thus, the March Statement also failed to comply with Regulation Z because such interspersing of promotional material and mandatory disclosures under 15 U.S.C. § 1637(b) amounted to a violation of the requirement to make disclosures "clearly and conspicuously."

43.    TILA provides for a creditor's civil liability for the violation of specific provisions of the statute, including "failing to comply with the requirements of . . . section 1637(a) [and of certain paragraphs of] section 1637(b) of this title."  15 U.S.C. §1640(a).

44.    In accordance with TILA's civil liability provision, Plaintiff and the Class are entitled to recover up to $500,000 in statutory damages, together with costs and reasonable attorney fees, for each of the Issuer's violations of TILA, as alleged above.

**WHEREFORE**, Plaintiff Cheryl Follman prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1)    An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)    A declaration that the Issuer's systematic and standard policy of failing to fully disclose to its customers their billing rights violates the Truth in Lending Act;

    (3)     An injunction permanently prohibiting the Issuer from engaging in the conduct described;

    (4)     Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

    (5)     Attorney fees, litigation expenses, and costs; and

    (6)     Such other and further relief as to this Court may seem just and proper.

### *Jury Demand*

Plaintiff respectfully requests a trial by jury.


Dated:  New York, New York
        March 15, 2010

Respectfully Submitted,

By: _____
Brian L. Bromberg


Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Ave
New York, NY 10025
(212) 678-6546

# Exhibit A

**ANNIE SEZ RETAIL INSTALLMENT CREDIT ... AGREEMENT**

In this ANNIE SEZ Retail Installment Cr... Agre... ..nt ("Agreement"), the words "you" and "your" refer to e... pers... ..no signs this Agreement or the Application requesting a Annie Sez Credit Card, or is authorized to use this ANNIE SEZ Credit Card Account ("Account"); "we", "us", and "our" refer to the seller/creditor, ANNIE SEZ, a Division of BIG M INC., 12 Vreeland Avenue, Totowa. NJ 07512, and any person to whom this Agreement may be assigned.

**1. Promise to Pay:** In return for extending credit to you on this Account from time to time, you agree to pay for all purchases you charge to this Account, and all other charges mentioned below, according to the terms of this Agreement.

**2. When Effective:** When you sign the Application for this Account or this Agreement, **or when you or someone authorized by you make a purchase on this account,** you will be agreeing to everything written here. Therefore, before you sign the Application or this Agreement, and before you use this Account, you should read this entire Agreement, which includes the cost-of-credit disclosures required by federal law. The information you provide on the Application that identifies you constitutes a part of this Agreement and is incorporated in it by reference. This Agreement will not be effective until we approve your Application, and then, after that, only if you or someone authorized by you charge a purchase to this Account. Also, until you or someone authorized by you use this Account, you will not be responsible for any use of the Credit Card after its loss or theft.

**3. Grace Period/Cost of Credit:** No Finance Charge will be imposed in any monthly billing period (a) in which there is no balance at the beginning of the billing period (the "Previous Balance" shown on your monthly statement) or (b) in which payments received and credits issued, within 25 days after the closing date shown on your monthly statement, equal or exceed the balance at the beginning of the billing period. If we do not receive the full amount due (the "New Balance" shown on your monthly statement) within 25 days after the closing date shown on your statement, a Finance Charge will be imposed, computed on the outstanding Average Daily Balance from month to month, by applying the monthly periodic rate of 1.65% (**ANNUAL PERCENTAGE RATE 19.8%**), subject to the following exceptions:

| Annual percentage rate (APR) for purchases 19.8% except in following States: | We apply a | monthly periodic rate of: | ANNUAL PERCENTAGE RATE: |
|---|---|---|---|
| | AL | 1.65% up to $750 | 19.8% |
| | | 1.5% over $750 | 18% |
| | AK | 1.5% up to $1000 | 18% |
| | | .84% over $1000 | 10% |
| | AR | 1/12% of the annual percentage rate | 5% per year above Federal Discount Rate, not to exceed 17% |
| | FL, HI, LA, MA, ME, MN, NC, SC, TX, WI | 1.5% | 18% |
| | KS | 1.65% up to $1000 | 19.8% |
| | | 1.25% over $1000 | 14.4% |
| | MI, PA | 1.9% | 22.8% |
| | NE | 1.65% up to $500 | 19.8% |
| | | 1.25% over $500 | 18% |
| Grace period for repayment of balances for purchases | 25 days on average | | |
| Method of computing the balance for purchases | Average daily balance including new purchases except in MA, ME, MN, NC, NE, MD, MT, NM, & MS where new purchases are excluded. | | |
| Minimum finance charge | $ .50 WHERE PERMITTED BY LAW | | |
| Late-payment fee: $0.00 TO $10.00, 0% to 10% of late installment as permitted by law; varies from state to state | | | |

A minimum **FINANCE CHARGE** of $.50 will be imposed each month in which a Finance Charge is imposed and the Finance Charge resulting from application of the above stated monthly periodic rate would be less than $.50, except there is no minimum **FINANCE CHARGE** in AR, DC, HI, MD, NE, NC and PR.

**4. Method of Computing Finance Charge:** We figure the Finance Charge on your Account by applying the above-stated monthly periodic rate(s) to the "Average Daily Balance" of your Account (including current transactions, except in the states listed below). To get the "Average Daily Balance" we take the beginning balance of your Account each day, add any new purchases (except we do not add in any new purchases in MA, MN, MT and NM), and subtract any payments and credits, any Returned Check Fee, Late Payment Fee and in AR, AZ, CA, DE, HI, LA. MS, ND, PA and WA we also subtract any unpaid Finance Charge. This gives us the daily balance. Then, we add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives us the "Average Daily Balance."

**5. Minimum Monthly Payment:** You agree to pay at least the minimum monthly payment shown on your monthly statement on or before the due date shown on that statement. The minimum monthly payment will be 5% of the New Balance or $10 whichever is greater. If the New Balance is $10 or less, the entire New Balance is due. You agree that any payment made on this Account will be in U.S. currency by money order or check drawn on a U.S. institution. If we decide to accept any payment that does not conform to this agreement, your payment will not be credited until it is converted into U.S. funds and you agree to pay any amount remaining after we converted your payment to U.S. funds. The minimum payment will include any past due amount. **You may at any time pay your entire balance in full or more than the minimum monthly payment due.** If you pay more than the minimum monthly payment, and there is a balance due, the excess amount will not reduce the next month's minimum monthly payment or affect your obligation to make minimum monthly payments in future months.

**6. Returned Check Fee:** If any check sent to us in payment on your Account is returned to us unpaid by the bank, we may charge you a Returned Check Fee of $15.00 (except $10.00 in AZ, ID, KS, MS, ND, OK, VA and WV; $5.00 in VT; and 5% of the check, not to exceed $15.00 in LA) to cover our collection costs, or such lesser amount as may be authorized by law, and you agree that we may add such fee to the balance due in your Account. No Returned Check Fee is imposed if you live in DE, ME, MA, MI, NE, OH, PA, RI, SD or WY.

**7. Late Payment Fee:** If you live in AR, AZ, CA, CO, CT, DC, FL, GA, HI, ID, IL, IN, KS, LA, MA, MD, ME, MI, MN, MO, MS, NC, NE, NH, NJ, NV, NY, OH, OK, OR, PA, RI, SC, TX, UT, VA, WA, WI, or WV, and your minimum monthly payment is not received by us within 10 days after it is due (more than 10 days in CA and MI; 15 days in ID, ME, MA and RI; 21 days in TX; 30 days in NC and WA), we may impose a Late Payment Fee. The Late Payment Fee will be imposed in following amounts: $10.00 in CA, CO, DC, FL, GA, IL, IN, MD, MI, MN, MS, NJ, NV, NY, OK, OR, PA, RI, TX, WA and WI; $10.00 in AZ, KS, and MO (except that the late fee will be $5.00 in these states if the late installment is $25.00 or less); $10.00 or 10% of outstanding balance, whichever is less, in MA; $10.00 in NC on accounts with outstanding balances of $100.00 or more and $5.00 on accounts with outstanding balances of less than $100.00; the greater of 5% or $5.00 in ID and NE; the lesser of 5% of the late installment or $10.00 in LA and ME; the lesser of 5% of the late installment or $5.00 in AR, CT, HI, NH, SD, TN, and WV ($1.00 minimum in WV); the lesser of 5% of the late installment or $3.00 in OH; the greater of 5% or $10 in UT; 5% of the installment ($10.00 maximum, $4.80 minimum) in SC; 5% of the late installment in VA. We will add any Late Payment Fee to the balance due in your Account. Indiana residents: the amount of the $10.00 Late Payment Fee is subject to change as provided in the Indiana Code § 24-4.5-1-106.

**8. Default/Collection Costs:** If you fail to pay any minimum monthly payment when due, it will be a default, and, subject to any right you may have under state law to receive notice of and to cure such default, we may declare the entire unpaid balance in the Account due and payable (except in WI you will not be in default until you fail to make a minimum monthly payment on two occasions within a 12-month period). Upon default, you agree to continue to pay finance charge at the rate set forth in the agreement until such time the account is paid in full or a judgment is obtained. If the Account is referred to an attorney who is not our salaried employee, in addition to the full amount owed and any court costs, you agree to pay our reasonable attorney's fees of 20% of the total amount due, or such lesser amount as may be permitted by applicable law. No attorney's fees will be imposed in AL (when the unpaid balance is under $300), IA, KS, ME, NE, OH, PR, and WI. or in any state, or in any amount, where not permitted by law. In the

PLEASE READ, TEAR ALONG PERF, AND KEEP FOR YOUR RECORDS

TEAR ALONG THIS EDGE

states of CA, CT, DE, NH and PA, and ... y ... ate where required by law, we will pay your reasonab... ... s if you prevail in a suit we bring against you or if you prevail in a suit you bring against us un... this ... ement. New Hampshire residents: If you successfully a... rt a p... al defense or counterclaim, the court may withhold part or all of any attorney's fees to which we may be entitled.

**9. Canceling or Limiting Your Credit/Change in Agreement:** We have the right at any time to limit or terminate the use of your Account and raise or lower your credit limit without giving you notice in advance. We may change any term of Agreement, including the rate of Finance Charge, by furnishing you notice of the change to the extent required by law. If permitted by applicable law, any new terms may at our option be applied to any balance existing in the Account at the time of the change, as well as to any subsequent transactions.

**10. Credit Card:** You request a Credit Card from us if it is our practice to issue one. All Credit Cards we issue remain our property and, if requested, you agree to return any Credit Card issued to you. You agree to notify us promptly if any Credit Card we issue to you is lost or stolen. You may be liable for the unauthorized use of your Credit Card. You will not be liable for unauthorized use that occurs after you notify us at P.O. Box 1003, Totowa, NJ 07511, 1-866-478-4505, orally or in writing, of the loss, theft or possible unauthorized use of your Credit Card. In any case, your liability will not exceed $50.

**11. Credit Investigation:** You authorize us to investigate your credit history by obtaining consumer reports and by making direct inquiries of businesses where you have accounts and where you work. We may request a consumer report from consumer reporting agencies in considering your application for this Account and later in connection with an update, renewal, extension of credit or reviewing or collecting the Account. Upon your request we will tell you whether or not a consumer report was requested and the name and address of any consumer reporting agency that furnished the report. You also authorize us to report your performance under this Agreement to credit bureaus and others who may properly receive such information. **A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.**

**12. Telephone Monitoring:** We treat every customer call confidentially. Because we want our customers to receive quality service, we randomly monitor phone calls between our customers and employees for evaluation by Supervisors. This is to ensure that prompt, consistent assistance, and accurate information is delivered in a professional manner.

**13. Disputed Amounts:** All written communications concerning disputed amounts, including any check or other payment instrument sent to us in an amount less than the full amount due that is marked "paid in full," that is tendered with other conditions or limitations, or that is otherwise tendered as full satisfaction of a disputed amount, must be sent to us at the address for billing inquiries shown on the billing statement.

**14. No Waiver By Us:** We reserve the right, at any time and in our sole discretion, not to impose part or all of any fee set forth in this Agreement or not to exercise any of our other rights under this Agreement and, should we do so, we will not waive our right to impose the fee or exercise the right as set forth in this Agreement in the future.

**15. Privacy Policy:** We collect nonpublic personal information about you from the following sources: information received from you on applications or other forms (such as name, address and social security number) information about your transactions with us (such as your account balance and payment history) and information received from a consumer reporting agency (such as your credit history). We may disclose all of this nonpublic personal information we collect about you to nonaffiliated third parties that perform marketing services on our behalf. We do not otherwise disclose any nonpublic personal information about you or former customers to anyone except as permitted by law. We restrict access to nonpublic personal information to employees who need to know the information to provide products and services to our customers. We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard nonpublic personal information. If you close your account, this policy still applies.

**16. Change of Address and Governing Law:** You agree to notify us promptly in writing if you move. Until we receive written notice of your new address we will continue to send monthly statements and other notices to the address you gave on the application for this Account or other address we have for you in our files. You understand that this Agreement will be governed by the law of your state of residence when this Account was opened, unless we receive written notice that you have moved to another state, in which case the terms applicable to your new state of residence will apply to the entire balance in your Account after we receive written notice of your new address. If you live in a foreign country at the time your Account is opened, or if you move to a foreign country after your Account is opened, your Account will be governed by the law of the State of New Jersey.

**17. Entire Agreement:** This is our entire Agreement and no oral changes to it can be made. **Notice to Florida Residents:** The Finance Charge rate shown above is authorized by Chapter 655 of the Florida Statutes. **Notice to Maryland Residents:** This Account is governed by Subtitle 9, Title 12 of the Maryland Commercial Law Article. **Notice to Texas Residents:** The Finance Charge rate shown above is authorized by the Market Competitive Rate ceiling that is in effect under Tex. Fin. Code §345.151 et seq. To contact Mandee about this Account call 1-866-478-4505. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 North Lamar Boulevard, Austin, Texas 78705-4207, Phone (512) 479-1285 or (800) 538-1579. Contact the Commissioner relative to any inquiries or complaints.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY AT ANY TIME PAY THE TOTAL BALANCE OUTSTANDING UNDER THIS AGREEMENT WITHOUT INCURRING ANY ADDITIONAL CHARGE. KEEP THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSE WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**YOU ACKNOWLEDGE RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT CREDIT AGREEMENT**

| Buyer's Signature | Date | Buyer's Signature | Date |
|---|---|---|---|
| | | *Stewart Schwartz* | |

Seller/Creditor
ANNIE SEZ, A DIVISION OF BIG M INC.

Stewart Schwartz,
Chief Executive Officer

**BILLING RIGHTS SUMMARY: IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at P.O. BOX CN-1003, TOTOWA, NEW JERSEY, 07511-1003, as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us at 1-866-478-4505, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

SPECIAL RULE FOR CREDIT CARD PURCHASES: If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services.

# Exhibit B

# Annie sez®

P.O. Box CN1003 Totowa, NJ 07511-1003

Please Show Name and Address Changes Here

NAME (IF DIFFE,          THA      THIS STATEMENT)

NUMBER AND STREET                          HOME PHONE

CITY              STATE        ZIP     BUSINESS PHONE

ANNIE SEZ
P.O. BOX 1228
NEWARK, NJ  07101-1228

Email address
Account:

PAYMENT DUE: $10.00

05007.01 T22  F:
CHERYL FOLLMAN

BROOKLYN NY

KINDLY WRITE YOUR ACCOUNT NUMBER
ON FACE OF CHECK OR MONEY ORDER
FOR YOUR CONVENIENCE
PAYMENT MAY BE MADE AT
ANY ANNIE SEZ LOCATION.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT

| TRANSACTION DATE | REFERENCE NO. | PURCHASES | PAYMENTS AND CREDITS | DESCRIPTION |
|---|---|---|---|---|
| 02/17/09 | 364 008433 | 19.99 | | Purchase |
| 02/17/09 | 364 008434 | | 3.00- | Return |

Shop Annie sez for the latest Spring trends from
famous designer names at famously low prices!
Choose from our new arrivals of designer shoes,
handbags, dresses and Spring outerwear all at a
savings of up to 60% off department store prices!

You can make a free phone payment by calling
1-866-478-4505 and using our automated system.

| PREVIOUS BALANCE | +PURCHASES/DEBITS | − CREDITS | − PAYMENTS | + FINANCE CHARGE | = NEW BALANCE | AMOUNT PAST DUE |
|---|---|---|---|---|---|---|
| 0.00 | 19.99 | -3.00 | 0.00 | 0.00 | 16.99 | 0.00 |

| AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | ANNUAL PERCENTAGE RATE | ACCOUNT NUMBER | BILL CLOSING DATE | PAYMENT DUE DATE | MINIMUM PAYMENT |
|---|---|---|---|---|---|---|
| 0.00 | 1.65% | 19.80% | | 03/15/09 | 04/10/09 | 10.00 |

* TO AVOID FINANCE CHARGES NEXT MONTH, PAYMENT OF NEW BALANCE MUST REACH US BY PAYMENT DUE DATE SHOWN ABOVE.

FOR ANNIE SEZ CUSTOMER SERVICE INQUIRIES CALL 1-866-478-4505

(TELEPHONING WILL NOT PRESERVE YOUR BILLING DISPUTE RIGHTS UNDER FEDERAL LAW)

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

**1. Payments:** You may at any time pay your total indebtedness or any part of it, but you must pay at least the total "Minimum Payment" shown on the front of this statement by the "Payment Due Date." Payment must be made in U.S. Dollars by check or money order drawn on a U.S. institution. If your payment is not accompanied by the payment stub in the enclosed return envelope, the posting of the credit may be delayed. However, you may pay at any of our stores and receive credit immediately. Please indicate your Account number on your check.

**2. Avoiding The Finance Charge:** To avoid additional Finance Charge next month, we must receive your payment of the full "New Balance" by the "Payment Due Date" shown on this statement.

**3. Minimum Finance Charge:** The Finance Charge that appears on the front of this statement is a minimum **FINANCE CHARGE** of $.50 in any month in which the Finance Charge that results from application of the periodic rate would be less than $.50, except there is no minimum **FINANCE CHARGE** in AR, DC, HI, MD, NE, NC and PR.

**4. Balance Method for Computing Finance Charge:** We figure the Finance Charge by applying the periodic rate(s) shown on the front of this statement to the "Average Daily Balance" of your account (including current transactions, except in the states listed below). To get the "Average Daily Balance" we take the beginning balance of your Account each day, add any new purchases (except we do not add in any new purchases in MA, MN, MT, and NM), and subtract any payments, credits, late payment fee, returned check fee, insurance charges and in AR, AZ, CA, DE, HI, LA, MS, ND, PA and WA we also subtract any unpaid Finance Charge. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "Average Daily Balance."

**5. Credit Balances:** If there is a credit balance in your account, it will be shown by the symbol ( - ) next to the amount appearing in the New Balance box. This is money we owe you. You can make charges against this amount or obtain a cash refund of the full amount we owe you upon request by writing to us at P.O. Box CN1003, Totowa, NJ 07511-1003. Any amount remaining in your account that is not charged against or refunded upon request, that is over $1.00, will be refunded automatically within 30 days after the expiration of six months. Please include your signature and your account number on all correspondence.

**6. Past Due Accounts:** If your account is past due, we have included a message about that on the front of this statement. We are required by certain state laws to tell you that: (a) this is an attempt to collect a debt and any information obtained will be used for that purpose; (b) under Iowa law we are a debt collector; and (c) a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**7. Disputes About Credit Information We Reported:** If you believe we reported inaccurate information about your account to a credit bureau, write to us at P.O. Box CN1003, Totowa, NJ 07511-1003, identify the information, and tell us why you believe it is incorrect or incomplete. Please include your complete name, current address, social security number and account number. If you have a copy of the credit report that includes the disputed information, please send a copy of that report to us as well.

**8. Disputed Amounts:** Payment of any amount you dispute is not required until we resolve your billing inquiry. All communications concerning disputed amounts, including any check or other payment instrument in an amount less than the full amount due that you send to us marked "paid in full", or you otherwise tender as full satisfaction of a disputed amount, must be sent to us at the address for billing inquiries shown on this billing statement. A summary of your billing rights under federal law appears below.

### BILLING RIGHTS SUMMARY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at P.O. Box CN1003, Totowa, NJ 07511-1003, as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us at 1-866-476-4505, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services.

5/98